UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BILLY ARD, )<br>)<br>        Petitioner )<br>)<br>v. )<br>)<br>DANIEL MCBRIDE, )<br>)<br>        Respondent ) | No. 2:04-CV-464 PS |

**OPINION AND ORDER**

*Pro se* Petitioner, Billy Ard, an inmate at the Maximum Control Facility in Westville, Indiana, was found guilty by the Conduct Adjustment Board (CAB) of solicitation of funds without authorization and was severely sanctioned as a result.[1]  After exhausting his administrative remedies, Ard petitioned for relief under 28 U.S.C. § 2254.  The Response filed on behalf of the Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982).  In its Response, the Attorney General of Indiana has submitted the administrative record, including documents designated A through F, which sets out the underlying procedures before the CAB.  The Petitioner filed a traverse and documents designated A through T.

**I.  RELEVANT FACTS**

On May 7, 2004, Internal Affairs Investigator Randy Rasner prepared a conduct report, charging Ard with a Class A offense #100, "violation of any federal, state or local criminal law not otherwise covered by any other disciplinary code offense," specifically I.C. 11-8-6-1 –

---

[1] The CAB is the internal Indiana Department of Correction administrative body that adjudicates violations of prison rules and regulations.

solicitation of funds.  (Resp.'s Brief, Exhibit A.)  The report was based on Rasner's investigation, which began on April 29, 2004.  (Resp.' Brief, Exhibit B.)  The investigation revealed that Ard wrote a letter to inmate Wilcutt that indicated that Ard was bilking a civilian named Leon Templet "out of money and a lot of it."  (*Id.*)  The letter also indicated that Ard was portraying himself falsely on a web site to attract persons to write to him.  (*Id.*)  Ard told Wilcutt in the letter that he intended to take all of Leon's money before it was over.  (*Id.*)

A letter from Leon Templet to Ard was also intercepted, which made clear that Templet and Ard were involved in a romantic relationship.  (*Id.*)  Rasner contacted Leon Templet who, according to Rasner, confirmed that he sent money to Ard, and also provided some of Ard's letters and money order receipts totaling $14,472.  (*Id.*)  Ard was not authorized by the Indiana Department of Correction to receive any funds from Templet.  (*Id.*)  Ard refused to discuss the matter with the investigator without his attorney present.

On May 11, 2004, Ard was notified of the charge against him.  (Resp.'s Brief, Exhibit C1.)  At the screening, Ard did not request a lay advocate or witnesses.  (*Id.*)  Ard requested physical evidence, specifically records from his prison account for the last year and letters Templet gave to the internal affairs investigator.  (*Id.*)

On May 14, 2004, the date of the hearing, Ard sought a continuance so that he could request, among other items, (1) an affidavit signed by Elaine Ard-Tolliver stating that she, not Leon, had provided the money to Ard; (2) the money order receipts; and (3) a statement from Templet regarding the charge.  (Pet.'s Traverse, Exhibit F.)  The CAB granted the continuance.  (Resp.'s Brief, Exhibit C3.)  It also told Ard that a statement from Templet "will not add or subtract from this case[,]" but that he may, if he wished, obtain Templet's statement through the

2

mail. (Pet.'s Traverse, Exhibits K & L.) However, on May 17, 2004, Rasner ordered Ard not to communicate with Templet because, according to Rasner, Templet had contacted the prison requesting that Ard not contact him. (Pet.'s Traverse, Exhibit I.)

The CAB hearing was held on May 25, 2004. (Pet.'s Traverse, Exhibits K & L.[2]) At the hearing, Ard testified that he was involved in a relationship with Templet, and that, although Templet sent him money, Ard didn't ask for it. (*Id.*) The CAB denied Ard access to the letters he allegedly wrote to Templet, stating that internal affairs would not release the letters "due to pending outside charges." (*Id.*) Evidently, they had been sent along to the local prosecutor so that criminal charges could be brought. Ard, as part of his defense, submitted a written statement (Pet.'s Traverse, Exhibit J) and letters from Templet (Pet.'s Traverse, Exhibit O) to the CAB.

The CAB found Ard guilty of solicitation of funds. (Pet.'s Traverse, Exhibits K & L.) The CAB based its finding of guilt on staff reports, Ard's statement wherein he admitted receiving the funds, Ard's transaction history, money order receipts, and the letters received by internal affairs from Templet. (*Id.*) The Report of Disciplinary Hearing indicated that Ard was refused access to the letters from Templet because outside charges were pending, and that the letters were reviewed at the internal affairs office before the hearing. (*Id.*) The sanctions imposed were a written reprimand, one year disciplinary segregation, 180 day earned credit time loss, including an imposition of a suspended deprivation of thirty days from a previous case, a demotion from Credit Class One to Credit Class Two, and one month loss of phone privileges. (*Id.*)

---

[2] Respondent's Exhibit D, the Report of Disciplinary Hearing, is incomplete.

On appeal, the facility head modified the charge to a lesser charge, "giving to or accepting from any person anything of value without proper authorization," a class B offense. (Resp.'s Brief, Exhibit E1.)  The facility head also modified the sanctions by reducing the loss of earned credit time to 120 days and the disciplinary segregation to six months, but left the remainder of the sanctions intact.  (*Id.*)  The final reviewing authority upheld the finding of guilt, the sanctions, and the modifications.  (Resp.'s Brief, Exhibit F.)

## II.  STANDARD OF REVIEW

As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it triggers the applicability of *Wolff v. McDonnell*, 418 U.S. 539 (1974), and requires certain procedural steps as stated in that Supreme Court decision.  Due process requires that Ard be given: "(1) advance written notice of the charges against [him] at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence in [his] defense when consistent with institutional safety and correctional goals; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action."  *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994), citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) and *Wolff v. McDonnell*, 418 U.S. 539, 564, 566 (1974).  For the hearing to be meaningful, the prisoner "should be afforded the opportunity to be heard before an impartial decision maker."  *Id.*

The decision must be supported by "some evidence in the record."  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).  The so-called "some evidence" standard has been repeatedly applied in this circuit.  *See Webb v. Anderson*, 224 F.3d 649, 650-51 (7th Cir. 2000), *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999), and *Meeks v. McBride,* 81 F.3d 717, 719-20 (7th

Cir. 1996). "This is a lenient standard, requiring no more than 'a modicum of evidence.'" *Webb*, 224 F.3d at 652 (citations omitted). Even evidence that can be characterized as meager is sufficient to support the revocation of good-time credits "so long as 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* (citing *Hill*, 472 U.S. at 457). "'[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board.'" *Id.* (emphasis and alteration in original) (citing *Hill*, 472 U.S. at 455–56).

### III. DISCUSSION

Ard claims that the State violated his constitutional rights in three ways: (1) he was not provided with advance written notice of the charge; (2) he was denied the documentary evidence he requested in violation of his due process rights; and (3) there was insufficient evidence to find him guilty.

*A.*     *24-Hour Notice Requirement*

Ard claims that he was not given 24-hour notice of the charge against him when the facility head modified the charge during the appeal process. (*See* Pet.'s Mem. at 8-11.) Specifically, he asserts that there is a "considerable difference" between the charge of "solicitation of funds" and the charge of "giving to or accepting from any person anything of value without proper authorization." (*Id.* at 9.) He further argues that he was not given a chance to marshal the facts and prepare or submit a defense to the modified charge, and that he was not given a hearing on the modified charge. (*Id.* at 9-10.)

Ard is entitled to written advance notice of the charge against him. *Henderson*, 13 F.3d at 1077, citing *Hill*, 472 U.S. at 454 and *Wolff*, 418 U.S. at 564, 566. "The notice should inform

5

[Ard] of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (per curiam). This requirement then allows Ard to gather the facts and to prepare a defense. *See id.*

Here, Ard was given notice of the charge that was originally before the disciplinary board – solicitation of funds. During the screening process, Ard was provided with the Report of Investigation of Incident.[3] (Resp.'s Brief, Exhibit B.) This Report clearly explained why Ard was being charged, what offense was at issue, and detailed the facts and evidence used to support the charge. Ard was also given IC 11-8-6-1, the alleged offense (Pet.'s Traverse, Exhibit C), a typed list of the amounts of money alleged to have been solicited (Pet.'s Traverse, Exhibit D), and his offender transaction history (Pet.'s Traverse, Exhibit E). (*See* Pet.'s Mem. at 2.) The facility head, on appeal, reduced the charge to a lesser offense of "giving to or accepting from any person anything of value without proper authorization," a class B offense.

Solicitation of funds pursuant to I.C. 11-8-6-1 defines prohibited activities as;

Sec. 1. A person committed to the department may not, without the express consent of the department:

> (1) conduct a private business on department grounds or use the services or resources of the department for a private enterprise;
>
> (2) use a department facility as the principal office for a business;
>
> (3) use a post office box provided by the department for persons committed to the department as a business address;
>
> (4) solicit funds or contributions for any purpose while in the custody or

---

[3] Ard denies having received a copy of the conduct report when he was given notice. (Pet.'s Traverse, Exhibit M-3.) Nevertheless, all of the pertinent information in the conduct report is found in the Report of Investigation of Incident. (*Compare* Resp.'s Brief, Exhibit A *with* Resp.'s Brief, Exhibit B.) Therefore, Ard was provided with all the facts underlying the charge despite not having received the conduct report.

>under the control of the department; or

>(5) do business with the department or provide a service for profit to persons committed to the department.

Ard was specifically charged with "(4) solicit funds or contributions for any purpose while in the custody or under the control of the department." (Pet.'s Traverse, Exhibit C.)  The facility head modified the charge to giving or receiving anything of value without authorization which is defined as, "Giving or offering a bribe or anything of value to a staff member, authorized volunteer, visitor or contractor or giving to or accepting from any person anything of value without proper authorization." (Pet.'s Traverse, Exhibit S.)  Each charge required obtaining something of value without authorization.  Ard was given notice that he was being accused of obtaining money from Templet without authorization from the institution.  The underlying facts support both the solicitation charge, as found by the CAB, and the modified charge, as found by the facility head.

Morever, Ard was aware that there were lesser included offenses with which he could be charged.  Both in his statement to the CAB and his appeals, Ard argued that solicitation of funds was not the proper charge and that there were lesser included offenses that were more appropriate. (Pet.'s Traverse, Exhibits J-2-3 & M-2.)  Thus, it seems a bit odd that Ard now complains that the facility head reduced the charge and the penalties that were assessed.

In support of his claim, Ard relies on *Evans v. Deuth*, 8 F. Supp. 2d 1135 (N.D. Ind. 1998), in which the original charge (giving anything of value) was changed to a different offense (extortion) at the hearing. (Pet.'s Mem. at 10.)  *Evans* is distinguishable because Ard received a detailed investigation report giving him notice of the offense and its underlying facts.  Because the facts set forth in the investigation report gave Ard all the information he needed to defend

7

against the solicitation charge, and the same facts were used by the facility head to modify the charge to a lesser offense, Ard was not deprived of his right to advance written notice of the charges against him.  *See Northern*, 326 F.3d at 911 ("Because the factual basis of the investigation report gave [petitioner] all the information he needed to defend against the trafficking charge [when the original charges were conspiracy and bribery], the reviewing authority's modification did not deprive [petitioner] of his due process rights.").  *See also Holt v. Caspari*, 961 F.2d 1370, 1373 (8th Cir. 1992) (prison disciplinary committee did not deny petitioner due process by elevating charge from "possession of contraband" to "possession of dangerous contraband" because the factual basis for both charges was the same and [petitioner] had all the information necessary to make his defense).

### B.     *Denial of Evidence*

During his screening, Ard requested certain physical evidence, including the letters Leon Templet provided to the internal affair investigator.  (Resp.'s Brief, Exhibit C1.)  On May 14, 2004, the date of the initial hearing, Ard sought a continuance so that he could request, among other items, a statement from Templet regarding the charge.  (Pet.'s Traverse, Exhibit F.)  The CAB granted the continuance, but also told Ard that a statement from Templet "will not add or subtract from this case[.]"  (Pet.'s Traverse, Exhibits K & L.)  The CAB nonetheless advised Ard that, if he wished, he could obtain Templet's statement through the mail.  (*Id.*)  On May 17, 2004, however, Rasner ordered Ard not to communicate with Templet because, according to Rasner, Templet had contacted the prison requesting that Ard not contact him.  (Pet.'s Traverse, Exhibit I.)

At the hearing on May 25, 2004, the CAB denied Ard access to the letters he allegedly

8

wrote to Templet, stating that internal affairs would not release the letters "due to pending outside charges." (Pet.'s Traverse, Exhibit L.) Ard argues that the letters could have been photocopied before being sent to the local prosecutor, that there was no valid security concern which would warrant the CAB's refusal to allow him access to the letters, and that the investigator never possessed the letters. (Pet.'s Addendum to Traverse at 6-10.) To establish that the investigator never possessed the letters, Ard submits Templet's signed affidavit stating he never sent the letters, or copies of the letters, to any member of the prison staff. (Pet.'s Traverse, Exhibit R.) Templet's affidavit, which also states that Ard never solicited money from Templet, is dated November 22, 2004, almost six months after the CAB hearing.

In *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003), the court stated that the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), "requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings." There are two functions of *Brady* in the prison disciplinary context. The first is to ensure that the disciplinary board considers all relevant evidence. *Id.* The second is to enable the prisoner to present his best defense. *Id.*

Ard argues that if he had reviewed the letters himself he would have been able to support his defense that he did not solicit funds from Templet. Ard was given specific information regarding the contents of the letters during his screening via the Report of Investigation of Incident. And from that information, he presented the defense that he didn't request money from Templet and therefore, is not guilty. Ard was able to make this argument to the CAB, and the CAB found him guilty based not only on its review of the letters (at the Internal Affairs office), but also on the other evidence including Ard's statement that he had indeed received money from Templet (Pet.'s Traverse, Exhibit J).

9

Moreover, the CAB was aware of evidence favorable to Ard when it reviewed the letters provided by Templet and those provided by Ard (Pet.'s Traverse, Exhibits J-4-5 & O). Even after having read both sets of letters, the CAB still determined that Ard had, in fact, solicited funds.

Alternatively, Ard has not suffered any harm, such as an inability to otherwise present an effective defense, resulting from the denial of access to the letters. The record reveals that Ard presented a substantial defense, including his own testimony and additional letters from Templet, that also indicated that Templet chose to give Ard money without Ard's request. The CAB's failure to provide Ard with copies of the letters was therefore harmless error. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) ("But even if [the CAB providing no reason for refusing petitioner's request for witness] was error, [petitioner] has not established that he was prejudiced."), citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2nd Cir. 1991) (harmless error analysis applies to prison disciplinary proceedings).

Ard also argues he was denied the right to obtain a statement from Templet. At the initial hearing on May 14, 2004, the CAB noted that Ard requested a statement from Templet, but stated that a statement from Templet would be irrelevant to the case. (Pet.'s Traverse, Exhibit L.) In his statement to the CAB, Ard admitted to corresponding with and receiving money from Templet, but argued that the money was given "of [Templet's] own free will." (Pet.'s Traverse, Exhibit J-4.) Ard submitted to the CAB copies of his own letters from Templet to establish that Templet had given him the money as a gift. (Pet.'s Traverse, Exhibit O.) Ard therefore adequately presented his defense to the CAB. Despite his defense, the CAB found that Ard didn't have authorization to receive money from Templet. Any statement from Templet would

have been repetitive and unnecessary. *See Piggie v. Cotton*, 344 F.3d at 677 (finding that "there is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary"). Therefore, Ard's constitutional rights were not violated when he was unable to obtain a statement from Templet.

## C.    *Insufficient Evidence*

Ard alleges that there was insufficient evidence to find him guilty of solicitation of funds without authorization. Ard argues that "not a single item of evidence that the CAB listed as evidence" meets the "some evidence" standard. (Pet.'s Mem. at 18.) The Report of Disciplinary Hearing explicitly indicates that the CAB relied on several pieces of evidence, including staff reports, Ard's statements, Ard's transaction history, and the letters and money orders from Templet, which were reviewed by the CAB at Internal Affairs. (Pet.'s Traverse, Exhibits K & L.)

As noted, the amount of evidence needed in these types of cases is very modest. Here, the presented evidence easily meets the "some evidence" standard. The Report of Investigation of Incident clearly explains the incident, and Ard in his statement provided at the hearing admitted that he received money from Templet. Ard does not dispute that Templet sent him money, only that he didn't solicit the money. The CAB had sufficient evidence from the Report of Investigation and Ard's admission that he received money from Templet to find Ard guilty of soliciting funds without authorization. On appeal, the facility head reduced the charge to giving or receiving anything of value without proper authorization, which is also supported by the "some evidence" standard.

Ard argues that Templet's affidavit (Pet.'s Traverse, Exhibit R) proves that he didn't

11

solicit the funds he received. However, that affidavit was signed six months after the CAB held the hearings and is not part of the administrative record in this case. In addition, the CAB considered all of the evidence, including the letters that Ard provided to the CAB from Templet that expressed similar sentiments to the affidavit – namely, that Ard did not solicit the funds and that Ard attempted at times to return the money. Nevertheless, the CAB still found Ard guilty based on all the other evidence it reviewed. This Court therefore finds that there was sufficient evidence to meet the "some evidence" standard. Consequently, Ard's claim that his finding of guilt was based on insufficient evidence is dismissed.

### IV.  CONCLUSION

For all the reasons stated, and because none of Ard's constitutional rights have been violated, this Petition for relief under 28 U.S.C. §2254 is **DENIED**. Petitioner's Motion to Rename Respondent [Doc. 9] is **DENIED AS MOOT**. Petitioner's Motion for Enlargement of Time [Doc. 10] is **GRANTED**. Petitioner's Motion for Default Judgment [Doc. 15] is **DENIED**. Petitioner's Motion to Include Addendum to Petitioner's Traverse [Doc. 18] is **GRANTED**.

**SO ORDERED.**

ENTERED: March 17, 2006

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT